# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**JUAN A. RODRIGUEZ-ABREU, et al.,**

**Plaintiffs,**

**v.**

**JEFF SESSIONS,[1] et al.,**

**Defendants.**

CASE NO. 16-1370 (GAG)

## OPINION AND ORDER

Plaintiffs, eleven correctional officers,[2] sued Defendants, the United States, et al.,[3] under the Administrative Procedures Act (APA) and for violating rights guaranteed by the Fifth Amendment of the United States Constitution under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). (Docket No. 52). Presently before the Court is Defendants' motion to dismiss (and a supplement) under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Nos. 53; 72). After reviewing the parties' submissions and pertinent law, Defendants' motion to dismiss is **GRANTED**.

## I.     Factual and Procedural Background

Plaintiffs were correctional officers at the Metropolitan Detention Center (MDC) in Guaynabo,

---

[1] Per Fed. R. Civ. P. 25(d), Attorney General Jeff Sessions is automatically substituted as a party in this case.

[2] Juan A. Rodríguez-Abreu, Mildred Aponte-Navarro, Mike Rodríguez, Lina R. Rodríguez, Andrés Laureano-Ramos, Sonia E. Aponte-Agosto, José R. Rosa-Floran, Marisol Montero-Mejías, Giovanny Rosa-Montero, José D. Correa-Rivera, and Luz Delia Figueroa-Ortiz.

[3] The U.S. Department of Justice, Charles S. Samuels, the Federal Bureau of Prisons, Jerry C. Martinez, Helen Marberry, PQR Insurance Company, STU Insurance Company, John Doe, Jane Doe, United States of America, U.S. Attorney General, and Conjugal Partnerships Doe-Lynch, Samuels-Doe, Doe Marberry, Martinez-Doe.

Puerto Rico. (Docket No. 52 at 4-5). While they were employed, in February 2013, a fellow guard was murdered. Id. at 5. A day later, the FBI interviewed Plaintiffs and transported them and their families to a safe house somewhere in Puerto Rico, and later, to the United States. Id. at 5-6. Once in the United States, Plaintiffs moved with their families to locations where friends or relatives lived. Id. at 6. Eventually, the Bureau of Prisons reassigned Plaintiffs to facilities at those locations. Id. According to Plaintiffs, they were assigned to work with inmates at those locations and placed in direct and imminent danger. Id. The ensuing facts provided in the complaint are presented confusingly and, fortunately, are not dispositive at this stage. The main takeaway, however, is that Plaintiffs filed administrative tort complaints between 2014-15. Id. at 10-12. Eventually, in March 2016, Plaintiffs filed the first of four complaints in this case.

If one were to print the four versions of Plaintiffs' complaint, the corresponding motions to dismiss, responses, and requests for leave to amend the complaint, the stack of papers would, as Winston Churchill once said, "by its very length defend[] itself against the risk of being read."[4] Originally, Plaintiffs filed a complaint asserting claims under the Federal Tort Claims Act (FTCA) and Bivens, 403 U.S. at 388. (Docket No. 1). Months later, they filed the first of three amended complaints. (Docket No. 22). When Defendants replied by filing their first motion to dismiss, Plaintiffs amended their complaint again, replacing the FTCA claims with claims under the Civil Service Reform Act (CSRA). (Docket Nos. 23; 28; 29). In due time, Defendants moved to dismiss the CSRA claims because Plaintiffs failed to exhaust administrative remedies; the Court agreed and dismissed the CSRA count. (Docket Nos. 38; 42) When Defendants moved to dismiss the surviving Bivens claim in a separate motion, Plaintiffs asked to amend their complaint again. (Docket Nos. 43; 47). The Court acquiesced. In the third amended complaint, Plaintiffs substituted their claims under the CSRA for claims under the Administrative Procedure Act (APA). (Docket Nos. 51; 52).

---

[4] DOMINIQUE ENRIGHT, THE WICKED WIT OF WINSTON CHURCHILL 21 (2001).

Thus, the third amended complaint asserts claims under the APA and <u>Bivens</u>. Plaintiffs allege that the APA allows them to seek judicial review for the decision to transfer them from the MDC to other prisons without adequate notice. (Docket No. 52 at 15). In their second count, Plaintiffs allege that <u>Bivens</u> entitles them to recover damages for Defendants' negligence for failing to consider the threats they received, as well as the health problems that arose as a result. <u>Id.</u> For the third time, Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim. (Docket Nos. 53; 73).

## II.     Standard of Review

As courts of limited jurisdiction, federal courts must construe their jurisdictional grants narrowly. <u>Destek Grp. v. State of N.H. Pub. Utils. Comm'n</u>, 318 F.3d 32, 38 (1st Cir. 2003). Consequently, the party asserting jurisdiction carries the burden of showing the existence of federal jurisdiction. <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." <u>Aversa v. United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996); <u>Torres v. Bella Vista Hosp., Inc.</u>, 523 F. Supp. 2d 123, 132 (D.P.R. 2007). Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6). <u>Negrón-Gaztambide v. Hernández-Torres</u>, 35 F.3d 25, 27 (1st Cir. 1994); <u>Torres</u>, 523 F. Supp. 2d at 132.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. <u>See</u> Fed. R. Civ. P. 12(b)(6), <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012) (citing <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011), which discusses <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." <u>Id.</u> A complaint does not need detailed factual allegations, but "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79. Second, the Court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III. Discussion

Defendants advance three arguments: (1) the CSRA precludes the APA and Bivens, (2) Bivens claims are time-barred, and (3) federal employees are entitled to qualified immunity. (Docket No. 53). In their response, Plaintiffs only address the second and third arguments. (Docket No. 56). Since the Court can grant Defendants' motion based on their first argument alone under Rule 12(b)(6), it will not consider the remaining two.

### A. Whether the CSRA Precludes the APA

The APA allows judicial review for "final agency action for which there is *no other adequate remedy* in a court." 5 U.S.C. § 704 (emphasis added). As Defendants point out, "not only does the CSRA provide a remedy . . . it provides the sole remedy." (Docket No. 53 at 7). The First Circuit "has termed the CSRA framework 'the exclusive mechanism for challenging adverse personnel actions in

federal employment.'" Gonzalez v. Velez, 864 F.3d 45, 55 (1st Cir. 2017) (quoting Rodriguez v. United States, 852 F.3d 67, 82 (1st Cir. 2017)). Indeed, the First Circuit has held that "[a] federal employee generally may not pursue alternative routes of judicial review, such as by filing a civil action in district court under the APA." Rodriguez, 852 F.3d at 82. Accordingly, lower courts in the First Circuit have held that the CSRA precludes an APA claim in the context of federal employment. See, e.g., Villanueva v. United States, 740 F. Supp. 2d 322, 325 (D.P.R. 2010) (APA inapplicable because remedy lies in CSRA); Taydus v. Cisneros, 902 F. Supp. 288, 294 (D. Mass. 1995). Other circuits have ruled similarly. See Taydus 902 F. Supp. at 292-93 (listing cases from the 4th, 5th, 6th, 9th, 11th, and D.C. Circuits).

Here, the CSRA precludes Plaintiffs' APA claims. Plaintiffs are federal employees and contest a transfer, which is a personnel action under the CSRA. See U.S.C. § 2302 (a)(2)(A)(iv). Plaintiffs also concede that the CSRA governs their claims. (Docket No. 26 at 1 ("Defendant alleges that Plaintiffs' claims under the Federal Torts Claims Act are preempted by the Civil Service Reform Act. We agreed [sic].")). Because the CSRA applies here and the CSRA is "the *exclusive* mechanism for challenging adverse personnel actions in federal employment," the CSRA precludes the APA in this case. Gonzalez, 864 F.3d at 55. Plaintiffs are not entitled to circumvent their failure to prosecute their case under the CSRA by bringing a claim under the APA. Worsening matters, Plaintiffs do not argue why the CSRA does not preclude the APA. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (citing Rivera-Gomez v. De Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal quotations omitted)). Taking all the facts in the complaint as true, the Court finds that Plaintiffs have not pled a plausible claim for relief. The APA count is therefore **DISMISSED**.

B.  <u>Whether the CSRA Precludes Bivens</u>

Plaintiffs' second count seeks relief under <u>Bivens</u>. In <u>Bivens</u>, the Supreme Court established "that a Fourth Amendment violation by federal agents, acting under color of governmental authority, gave rise to a cause of action for money damages against those agents in their individual capacities." <u>Gonzalez</u>, 864 at 52 (citing <u>Bivens</u>, 403 U.S. at 389). Essentially, the Supreme Court created "a new constitutional tort." <u>Id.</u> The boundaries of this type of tort "are hazy" and the Supreme Court has "made plain its reluctance to extend the <u>Bivens</u> doctrine to new settings." <u>Id.</u> The test to determine if <u>Bivens</u> applies should consider three questions: (1) would it be extended to a new context, (2) are there alternative means of obtaining relief, and if so, (3) do special factors "counsel hesitation in extending the reach of the <u>Bivens</u> doctrine." <u>Id.</u> (citing <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1857, 1865 (2017)).

Recent First Circuit case law supports finding that Plaintiffs lack a plausible claim under <u>Bivens</u> because the CSRA provides an alternative means of obtaining relief. In <u>Gonzalez</u>, the First Circuit rejected an attempt to sue coworkers and supervisors—federal employees—in their individual capacities under <u>Bivens</u>. <u>Id.</u> Addressing plaintiffs' discrimination claims, the First Circuit explained that "the CSRA and Title VII, with their regulatory accoutrements, form a comprehensive remedial network fully capable of protecting federal employees against acts of discrimination in the workplace." <u>Id.</u> at 54. Thus, when the CSRA provides an adequate remedy "[t]here is no justification for implying a <u>Bivens</u>-type remedy." <u>Id.</u> Here, Plaintiffs concede that the CSRA applies. To their misfortune, they failed to adequately prosecute the CSRA claims. But this "accident" does not entitle them to relief under <u>Bivens</u> because it does not defeat the fact that an adequate remedy existed under the CSRA, a dispositive factor. <u>See</u> <u>id.</u> at 53 (even assuming the case does not apply <u>Bivens</u> to a new context, "plaintiffs hit a roadblock at the next step of the analysis, that is, whether there exists an alternative process that Congress reasonably may have viewed as an equally effective surrogate for an action brought directly under the Constitution," in this case the CSRA). Therefore, Plaintiffs' second claim is also **DISMISSED.**

C. Articles 1802 and 1803

Plaintiffs' claims under Articles 1802 and 1803 of the Puerto Rico Civil Code are dismissed as well. "[A] plaintiff may only pursue an Article 1802 claim when it is based on 'tortious or negligent conduct distinct from that covered by the specific laws invoked, or which have an independent basis to support them.'" Irizarry v. Kmart Corp., No. CV 15-2330, 2016 WL 270386, at *2 (D.P.R. Jan. 21, 2016). An 1803 claim asserts the same conduct but holds superiors accountable under the doctrine of *respondeat superior*. Here Plaintiffs base their Article 1802 and 1803 claims on tortious conduct that they allege is covered by the APA and Bivens. Therefore it is not "conduct distinct from that covered by the specific laws invoked." Nor do Plaintiffs have "an independent basis to support [their 1802 and 1803]" because the CSRA establishes the *exclusive* remedy for the type of conduct that Plaintiffs are suing for. See also Torres-Medina v. Dep't of the Army, No. 15-2085, 2016 WL 4179885, at *3 (D.P.R. Aug. 4, 2016) ("Plaintiff's Article 1802 and 1803 claims also fail. The Rehabilitation Act is not only 'the judicial avenue appropriate for a federal employee's disability discrimination allegation, . . . [but also] the exclusive remedy for [Plaintiff]'s disability discrimination claim'") (internal citations omitted); De Jesus-Maldonado v. Veterans Admin. Hosp., No. 09-1574, 2009 WL 2778055, at *2 (D.P.R. Aug. 25, 2009) ("Because of the *exclusive* nature of the remedy, an FTCA action may not be brought in conjunction with a state law tort claim, such as Article 1802.") (emphasis added) Therefore, if Plaintiffs' APA and Bivens counts fail because the CSRA provides the exclusive remedy, so must their 1802 and 1803 counts.

Even if the CSRA did not preclude the Articles 1802 and 1803 counts, the Court notes that it may dismiss the claims against the United States and federal employees in their official capacity. It is well established that, as a sovereign, the United States is immune from suit unless it waives its immunity and consents to be sued. See United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The United States has not expressly waived its immunity here, nor

has it expressly consented to be sued under the state laws of Puerto Rico; thus, jurisdiction does not exist. Accordingly, counts three and four are **DISMISSED**.

## IV.    Conclusion

Defendants' motion to dismiss at Docket No. 53 is **GRANTED.** Plaintiffs' claims are dismissed with prejudice and the Court will enter judgment accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 22nd day of January, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge